FAUNCE *v.* WEXFORD COUNTY.

SCHOOLS AND SCHOOL DISTRICTS—COUNTY SCHOOL COMMISSIONER—
SALARY—CITIES—MUNICIPAL CORPORATIONS.

The regularly elected county school commissioner of the
county of Wexford, holding a second term of office be-
ginning in 1907 and expiring in 1911, received a salary of
$1,000 annually. Upon his re-election to the office in 1911,
his salary remained the same. There were at the com-
mencement of the term 1907-1911 125 schoolrooms in the
county, including Cadillac, and during the succeeding term
175 school rooms. Cadillac was not incorporated as a city
of the fourth class, and acted under a special legislative
charter, which remained in force until 1914, when a home
rule charter was adopted. Under Act No. 148, Pub. Acts
1905, providing that the commissioner's salary should not
be less than $1,500, where 175 rooms were under his super-
vision, *held*, that since the city was governed by the local
act constituting its special charter, its schoolrooms should
not be counted in fixing the amount of his salary and he
was not entitled to a greater sum than that fixed by the
board of supervisors, *i. e.*, $1,000.

Case-made from Wexford; Lamb, J. Submitted
June 22, 1916. (Docket No. 66.) Decided July 21,
1916.

William H. Faunce presented two claims for salary
as commissioner of schools of Wexford county to the
board of supervisors of said county. The claims were
disallowed by said board, and claimant appealed to the
circuit court, where the appeals were tried in one case
without a jury. Judgment for defendant. Plaintiff
brings case-made. Affirmed.

*William H. Yearnd,* for appellant.

*Ray E. Bostick,* for appellee.

MOORE, J. The facts are not in dispute. Upon the request in writing of the plaintiff before judgment, the court made the following findings of fact and law in said cause, to wit:

"At the regular election held in April, 1903, the plaintiff, William H. Faunce, was duly elected to the office of county school commissioner of the county of Wexford; that he duly qualified and took the office July 1, 1903; that his term expired June 30, 1907; and that during said term he received the salary as fixed by the statute then in force.

"In April, 1907, the plaintiff was again elected to said office of county school commissioner, and duly qualified for the same; that his term of office expired June 30, 1911; and that during said term he received the sum of $1,000 per annum as salary for his services.

"Again in April, 1911, he was elected to said office, duly qualified for the same, commenced said term, July 1, 1911, and which term expired June 30, 1915, and that during said term he received the sum of $1,000 per annum as salary for his services.

"At the time the salary was fixed and determined by the board of supervisors for the term commencing July 1, 1907, and expiring June 30, 1911, there were over 125 schoolrooms in said county, including the rooms in the schools of the city of Cadillac, and that at the time the salary was fixed and determined by the board of supervisors for the term commencing July 1, 1911, and expiring June 30, 1915, there were over 175 schoolrooms in said county, including the rooms in the Cadillac schools and the parochial schools at Cadillac and Mesick.

"At the October session of the board of supervisors for said county for the year 1905, the plaintiff called attention to the change in the law and requested the board of supervisors to increase the salary accordingly, but that no increase was made, and that the salary was fixed at $1,000, being the minimum salary for counties having 100 schoolrooms under the jurisdiction of the county school commissioner, and not including the rooms in the Cadillac schools.

"It is conceded and found by the court that the services rendered by the plaintiff in the discharge of the

duties of the office of county commissioner were duly performed.

"At the April session of the board of supervisors in the year 1915 the plaintiff presented his claim of $1,683.36 alleged to be due him for services performed as county school commissioner from August 1, 1911, to April 1, 1915, claiming that he had not received the minimum salary as provided by the statute applicable during the term beginning July 1, 1911, and ending June 30, 1915, up to April 1, 1915. After a hearing the claim was disallowed by the board.

"At the October session of the board of supervisors for the year 1915 the plaintiff presented a claim for $1,200 to the board of supervisors, being the amount alleged to be due him as compensation for services performed from July 1, 1907, to June 30, 1911, on the claim that he had not been paid the minimum salary as provided by the statute applicable during that period. This claim was disallowed by the board. By stipulation the two claims are heard as one in this court.

"It is admitted that at an election duly held in the city of Cadillac, in said county and State, on the 12th day of November, 1895, pursuant to the provisions of section 1 of chapter 33 of Act No. 215 of the Public Acts of 1895, it was regularly and legally determined that the city of Cadillac should not become reincorporated under the general law governing cities of the fourth class, being Act No. 215 of the Public Acts of 1895.

"It is also admitted that since the 1st day of March, 1914, the city of Cadillac has been governed by a charter adopted under the so-called 'Home Rule Law' of 1909 (Act No. 279, Pub. Acts 1909 [1 Comp. Laws 1915, § 3304 *et seq.*]), which said charter was regularly and legally adopted at an election held in said city on the 9th day of December, 1913.

"It must also be conceded as a fact that from and after the 22d day of May, 1895, up to the 1st day of March, 1914, the city of Cadillac was governed under and by virtue of the act reincorporating it, being Act No. 429 of the Local Acts of the legislative session of 1895, approved and becoming operative on May 22, 1895, and that by the terms of this local act so much

of Act No. 178 of the Session Laws of 1873 as was not modified or superseded by the express provisions of said local act was embodied in and became a part of said charter of said city of Cadillac.

"Conclusions of Law.

"The question naturally arises whether the expression, 'operating under a general charter,' as used in the statute, refers to the basic law of a municipality or to the general law providing for the establishment and operation of graded schools in the cities and villages throughout the State not organized by virtue of special acts of the legislature.   *   *   *

"So far as is important in this case, the charter of the city of Cadillac from May 22, 1895, to March 1, 1914, was Local Act No. 429 of the Local Acts of the legislature for the year 1895, by which the city of Cadillac was reincorporated, and which act by specific reference embodied as a part thereof so much of Act No. 178 of the Public Acts of 1873 as was not modified or superseded by the express provisions of said local act. It must be conceded, then, that so far as Local Act No. 429 modified and superseded Act No. 178 the charter of the city of Cadillac is special.   The act of reincorporation itself is by its terms special.   It can hardly be conceived how the charter can be held general for some purposes and special as to others, when all are covered by the same instrument and what it is specifically made to include as a part and parcel thereof.   In my judgment it must be held to be all one thing or all the other.

"Act No. 215 of the Public Acts of 1895, known as the fourth-class city law, repealed Act No. 178 of the Laws of 1873, and all other acts and parts of acts inconsistent with the provisions of said act.   Section 1 of chapter 33 of said act excepted from the operation of said Act No. 215 all cities within the fourth-class city classification that came within its terms and complied with the following proviso:

" 'Provided, however, that whenever fifty or more of the qualified voters of any city of the fourth class, which has been incorporated under a special act of the legislature, shall file with the council thereof on or before the first day of November, in the year of our Lord one thousand eight hundred ninety-five, a petition praying that an election of the qualified voters of such

city be called to determine the question as to whether such city shall remain incorporated under the special act under which it was incorporated and by which it is governed at the time of the filing of such petition, or whether it shall become subject to the provisions of this act, thereupon it shall be the duty of the council, within ten days after the filing of such petition, to call a special election of the qualified voters of such city to determine such question.'

"It will be noticed that the proviso applies solely to cities incorporated under special acts of legislature. The city of Cadillac, having been reincorporated by virtue of Local Act No. 429, came within the proviso. A petition was filed and an election held thereunder, the result of which was that the city voted to remain incorporated under the special act rather than to come under the provisions of the general law, known as the fourth-class city law, being Act No. 215 of the Public Acts of 1895.

"The charter of the city of Cadillac, as provided by said Local Act No. 429, specifically provided for the organization and operation of public schools in said city, including the examination of teachers and supervision of the schoolrooms and the teachers therein employed. In fact, by the terms of the city charter, the 'public schools of the city of Cadillac' is made and constituted a separate and distinct corporation. with its own charter or basic law.

"Whatever may be claimed to have been the status of the city charter prior to May 22, 1895, since that date the city schools must, in my judgment, be considered as having been governed under and by a special charter. If, then, the question at issue is to hinge upon whether the legislature had in mind a general charter, as distinguished from a special city charter, the schoolrooms in the city of Cadillac should not be included in the count. * * *

"While the minimum salary as fixed by the statute may be and doubtless is inadequate, when the importance of the work and the ability, both native and acquired, that go to make up a competent commissioner of schools, are considered, yet that is a matter for the legislative body of the county, and not for the court.

"From what has been said it follows that, interpreting the statute from either point of view, the plaintiff

is not entitled to recover, and judgment is therefore directed for the defendant, but without costs."

It is insisted the court erred in not counting the schoolrooms in the city of Cadillac. It is claimed by appellant that section 10 of Act No. 148 of the Public Acts of 1905 (2 Comp. Laws 1915, § 5885) should control the salary of the plaintiff during his term of office commencing July 1, 1907, and ending June 30, 1911. It provided in part:

"And not less than twelve hundred dollars where there are one hundred twenty-five schoolrooms under his supervision; and in no case shall such compensation exceed the sum of eighteen hundred dollars per annum: *Provided,* that in estimating the number of schoolrooms in any county all graded schools operating under a general charter shall be included."

It is also claimed by appellant that section 10 of Act No. 247 of the Public Acts of 1909 (2 Comp. Laws 1915, § 5885) should determine the plaintiff's salary during his term of office commencing July 1, 1911, and ending June 30, 1915. It provides:

"Not less than fifteen hundred dollars where there are one hundred and seventy-five schoolrooms under his supervision; and in no case shall such compensation exceed the sum of eighteen hundred dollars per annum: *Provided,* that in estimating the number of schoolrooms in any county all graded schools operating under a general charter shall be included."

This language is not ambiguous, and we think it clearly justifies the board of supervisors and the circuit judge in declining to count the schools of the city of Cadillac.

Judgment is affirmed, with costs to defendant.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.